The next and final case in the call this morning is number 109 469 I'm sorry 109 796 Daniel Goodman versus Chris Boyd We'll take that as agenda number nine. You ready? Thank you, your honors. Good morning, Michael Kasper, counsel. On behalf of the petitioner Chris Ward, this is an election case that poses the question of whether or not an electoral board which rules upon candidate eligibility has the authority to invalidate a candidate's nominating petitions where that candidate has not yet satisfied a constitutional residency requirement. In this case, the petitioner, Chris Ward, filed petitions to run for the office of circuit court judge from the 4th sub-circuit of the 12th circuit at the time he did not reside within that sub-circuit, the time he filed the nominating petitions. The issue presented to the electoral board, there was a challenge to his candidacy based upon the statement in his statement of candidacy that I am, quote, legally qualified to hold such office, close quote. The issue, as I said, was whether or not the electoral board has the ability to invalidate a candidate's nominating petitions where the candidate has not yet satisfied the constitutional residency requirement. The electoral board ruled that it did not. The circuit court reversed. A divided appellate court affirmed the circuit court in reversing the electoral board. And at first blush, that statement seems like a fairly sweeping statement. The candidate who has not yet satisfied the constitutional residency requirement. But in fact, that is the answer. The answer is no. The electoral board was right. And the reason for that is that has always been the law in Illinois. Out of curiosity, counsel, I guess it's your position that he has to be eligible at the moment he's selected in the general election. Is that right? Correct. That's right, your honor. So, I mean, is there a, I mean, I'm just thinking about the climate in which we live and the economy in which we live. He's living in a different county. But on the day of the election, right, he has to have established residency in that county. Is there a grace period? Is it at that moment that the clock ticks when the board certifies on that day? I think that the answer is clear. And I think the answer is election day. And in fact, every decision of any court or any electoral board anywhere in Illinois, of which I am aware, has determined that residency is measured beginning on election day. That's the starting point. And in fact, I think that's consistent with Article 6, Section 11. You must be a resident of the unit that selects you. Well, that selection only happens on one day. And again, I'm only thinking about the practicalities here. And that is that someone would have to start the process prior to election day, wouldn't they? Prior, he or she, prior to knowing whether or not they were elected? Oh, certainly. Certainly. The election code requires a candidate for any office, legislative, judicial, executive, to file a statement of candidacy. In this case, the way the calendar. So give me an idea of how it works. All right. I think the best way to understand this is to note that all candidates for all offices have to file a statement of candidacy that contains exactly the same language. For judicial, executive, legislative offices, it's exactly the same. Every court of which I am aware, for example, the legislature, the legislature has a two-year durational residency requirement. So you have to live in the district for two years prior to the election. Every court that has decided this question has decided that starts on election day. Last year, the election was on November 2, 2010. That meant that a candidate for the legislature had to live in that district on November 2, 2008, two years before the election. However, this is where it gets complicated. You have to file your statement of candidacy exactly one year before the election, November 2009. So a candidate who moved into the legislative district on November 1, 2008 is qualified. On the day they submit their petitions, they have not yet satisfied that requirement. They have not been a resident for those two years. But no court has ever said that it's not, in fact, a two-year requirement. It's a three-year requirement because the language of the statement of candidacy is phrased in the present tense. So that when the candidate signs it, they say that I am legally qualified. Going back to my example, a candidate who moved in on November 1, 2008, when he signs that paper on November 2, 2009, he has not been a resident for two years. So he has not yet satisfied the eligibility requirement of the Constitution. Does that also mean that the other two requirements to be, in our case, a U.S. citizen and a licensed attorney? So when you file your papers, does that mean sometime later that you can be a U.S. citizen or an attorney? I mean, so why would you treat one element differently than the other two? I think that there's some ambiguity about that, but I think it resolves in favor of the question of residency being, I think that Section 11 has a temporal reference. Of the unit that selects him, that means on the date of selection. And that's absent from the other two elements, citizenship and licensure. So a senior in law school, anticipating he will take the bar, he passes the bar, can become a candidate? I believe that that's probably the proper interpretation. Although I don't think it's as clear as it is with residency, because there is this temporal reference of selection, which is a present tense phrase, just like the statement of candidacy. So I think that that's probably right. But a law student who has not yet become licensed, the Constitution provides, Section 11 provides, that you must have that qualification to be a judge, not to be a candidate. So if that person doesn't then become a licensed attorney, then they're subject to all sorts of penalties. The most obvious being a quo or onto action, should they be successful in the election. So any challenges to the eligibility, whether it's residency or having a law license, would necessarily have to come after the election, under your interpretation? It's a little more nuanced than that. Let's say it's residency. So going back to the durational residency of the legislature. Let's go back. Let's just take the issue we have here, judges. That he's a lawyer, and I'm eligible. If we agree that the eligibility is as of the date of the election, any challenges to that eligibility can't be brought before the election. Whether he's a resident, or he or she is a resident, or whether he or she has passed the bar and is a lawyer. For judges, I believe that's right. I believe that the residency date is determined as of election day. So if the challenge is successful as of that date, no one is elected. Correct. To start the process over. Exactly. That's correct. Now, for example of a legislative candidate, then I think that the process is a little bit different. The question that an electoral board takes up is whether or not a candidate can meet the eligibility requirements. Again, the candidate who moved in on November 1, 2008, is eligible. Because he will have lived in that district for two years preceding the election. If he moved in on November 3, 2008, I think his petitions are subject to challenge. Because he cannot satisfy the eligibility criteria. But that's the rub, isn't it? With a legislative candidate, they have already established residency, in your example, for at least one year. With the prospect of being able to complete that eligibility requirement and be there another year prior to the election. In the judge's case, as indicated by Justice Carmar's question, there could be a protest or a petition, but only after the election. It might throw out the results of the entire election if that person didn't establish residency. There's a far greater risk in the judge's example than the legislative example, wouldn't you agree? Well, I think it's less likely, sure. But it's certainly possible that a person could file to run in a legislative or executive race, and stay in there only with the intent of surviving the challenge period, and then move out. That's an entirely possible thing. And so I think that it's not beyond the realm of possibility that someone would file, reside in the legislative or within the state of Illinois for purposes of executive offices, but then move out prior to the election. In that case, they wouldn't satisfy the requirements either, and would be subject to the same removal prospects that a candidate for the judicial office does. Would there be a prohibition then, under your scenario, that someone who wants to run in, say, the 14th Sub-Circuit and the 10th Sub-Circuit, could actually file in both, and then decide on election day which one he's going to move into? No, I don't believe that that's possible. And the reason for that is there's a provision in the election code that says that a candidate who files to run for two incompatible offices must withdraw within one week after the close of the filing period, or else they will not be certified for either. So I don't believe that's possible. How would those two offices be incompatible? I don't think that... But I think that it's impossible to run for two judicial offices. You cannot serve in two judicial offices at the same time, therefore they're incompatible, which happens with some frequency in judicial elections. People file to run in several different vacancies, and then withdraw from all but one of them. We're not talking about serving. We're talking about being elected. And so, under your scenario, is that you don't know where you're going to be living until after you're elected, or the day you're elected. But again, I think that the provision in the election code, which prohibits you from being certified as a candidate for incompatible offices, would preclude you from filing for more than one judicial vacancy and staying in them beyond that one-week period that the election code provides for. Aren't voters entitled to know whether candidates are qualified for the office they seek? Yeah, that's exactly sort of the rub of this case. But as far as judicial candidates, you really don't know. And you don't know for legislative candidates under the law today. But you know, when they've got a two-year period, you know at least on the date they were certified how long they've been there. Right, and what you don't know is whether or not they will satisfy the Constitution. The example that I used of the person who moved in November 1, 2008, on the date that they filed their petitions, they are not legally qualified. So how does your position rather encourage people that might not make the eligibility requirements to run? And then, oh well, then we've had an election for nothing. I mean, what's the purpose? Then that office, I assume, becomes vacant. And so in a judicial case, there's nobody to serve the needs of the people. So how is that? How does that relate to public policy? I think that the public policy is set by the Constitution. The Constitution has three qualifications clauses, one for legislators, one for executives, and one for judges. And for legislators, there's a two-year duration. For executives, there's a three-year duration. For judges, there is no duration. The election code provision that requires you to file your nominating papers one year before the election has the effect of imposing a one-year de facto residency requirement. That's what it does. Every candidate must live in that district one year prior to the election. And there is a long line of cases that we cite in our brief, not only from this court, but from every other court in the country, including the United States Supreme Court, that stands for the proposition where the Constitution sets forth the qualifications for an office, the legislature is without power to change them. So for this candidate, the filing period was one year before the election. So there was a de facto one-year residency requirement set not by the Constitution, but by the General Assembly. And that could be changed. And in fact, about two weeks after I filed my reply brief in this case, the governor signed Public Act 96-1008. It changed the filing period. So next year, candidates for the same office will have to live in the district two weeks longer than candidates did last year. That has the effect of extending the durational residency requirement for this office. And it's simply our position that where the Constitution sets forth the requirements for an office, the legislature is without the power to enhance them. And I don't think it can be disputed that by imposing a one-year requirement, by making you file this paper one year in advance, that imposes a one-year residency requirement. And I don't think that's permitted by the Constitution. So in... Mr. Casper, don't we have to look back to what the purpose of the legislature's intent was with regard to sub-circuits? Maybe I'm wrong. You can correct me. But I thought it was to make sure that sub-circuits would have persons that would be reflective of the sub-circuit be able to be elected as judges. And if your argument is that you don't really have to live there, but you can until the day of election, doesn't that defeat the purpose of the legislature regarding sub-circuits? No, I don't believe it does. Assuming that that is the intent, and I believe it is, to encourage judges to reside in the sub-circuits to have greater geographic diversity, I don't think that changes this at all. Mr. Ward would be required to live in the Fourth Sub-Circuit in order to serve as a judge from that sub-circuit. Absolutely. In fact, the legislature's concern was the opposite. It was not, in enacting that, it was not so much that candidates would move in to serve, but they would move out after they were elected. And that's part of the reason why residency in judicial sub-circuits has been controversial. Article 6, Section 12 says, the words themselves, right, which is the best rule with respect to statutory construction, said, quote, to cause his name to appear on the ballot, a candidate must be eligible for the office of judge. The import of the words cause his name. Doesn't that mean that eligibility for office is a conditioned precedent to appearing on the ballot? Yeah, and that's certainly the argument that the respondent relies upon. That might be his argument. I'm just asking you about the words of the statute itself. I know you use different articles and then argue by analogy what's happening with respect to the temporal nature of the legislature, but my specific question is, what does that mean, cause his name to appear on the ballot? I think it means that a person who will satisfy the eligibility requirement, all of the eligibility requirement, to be a judge, and the residency requirement is that you be a resident of the unit that selects you. The unit does not select you the day you file your nominating papers. The unit selects you on election day. So a person who resides in that unit on election day satisfies the eligibility requirement. Going back to my example of the legislature. Before the words may cause his name, it says a person eligible for the office of judge. Doesn't that indicate a person already eligible for the office of judge may cause his name to appear on the ballot? I don't believe that that's what that necessarily means. I think that what it means is a person who satisfies the eligibility criteria. And in this case, it is... So you would read it, a person who satisfies the eligibility criterion, open parens, which would be residency on the date of election, may cause his name to appear on the ballot. Isn't that a little strained interpretation of a person eligible? No, I don't think it is. I don't think it is. And I think that the eligibility criteria has to be read sort of in pari materia. And so there is no similar clause in the article regarding the legislature or the executive. So does that mean eligibility is not a condition precedent to running for those offices? I think that Section 12, the purpose of Section 12 is to indicate that judges will be elected as opposed to some other form of selection. And so there is no evidence to, in the constitutional record, to support the contention that judges are to be treated differently than legislators or executives for purposes of determining when residency is measured. Your entire argument, then, has to center on the words resident of the unit which selects him, as opposed to Section 510-7 of the Election Code, which requires the candidate to say I am legally qualified, which sounds like it's the present day, and Section 12 of the Constitution, which, as Justice Thomas was inquiring about, says a person eligible may cause his name. We'd have to disregard all of that language. No, I think that there is a tension. And the tension is that in Section 11 of Article 6, it uses the present tense verb selects. The Election Code says, uses the present tense as well, as this Court has noted in the Sincus decision from a couple years ago regarding eligibility for municipal offices. That also uses the present tense, Section 7-10 of the Election Code, when it says in the Statement of Candidacy, I am legally qualified. So the tension arises in that both are phrased in the present tense, but one takes place a year earlier than the other one. And the Sincus case is particularly interesting in this case. In Sincus, this Court ruled that in order to be eligible to run for a municipal office, you could not be in arrears on a debt to the municipality. The Municipal Code said in order to be eligible, you could not be in arrears on a debt to the municipality as an eligibility for office. This Court ruled that that meant to run for office as well, relying on the present tense nature of the Statement of Candidacy. Would we have to overrule Sincus? No, I don't believe so. And the reason for that is that that's a statutory provision, not a constitutional one. It's not a constitutional residency because a candidate who has lived in their legislative district for one year on the date they signed their Statement of Candidacy is under every decision that I am aware of eligible to run. But if, because that, they find, don't forget, they sign and file exactly the same form as judicial candidates. The language is exactly the same. Thank you. Has he answered the question? Yes. The unit of election, does that, is the definition of unit of election necessary in this case? Yes, I believe it is. So we would have, in Cook County, what is the unit of election? The sub-circuit. The sub-circuit or the full circuit, depending on which vacancy you're in. If you live anywhere within Cook County, you can run in any sub-circuit? Yes, I believe that, I believe that's right. Yes, I believe that that's what the Constitution provides. In Kane, in DuPage County, if you live in the county, but your residence is not within the sub-circuit, does that make a difference? Yes, I believe, no, it does not, I don't. I don't believe it does. I believe that you must be a resident of the unit that selects you when it selects you, which is on election day. So that is an issue in this case? Yes. It must be defined as to downstate, if you will, in Cook County? I believe that it's the same in analysis, that's right. I believe the Constitution has the same application in both Cook County and the downstate circuit. May I ask a question, because I'm confused. Are you saying, the question was, you said the candidate could run? Yes. But are you saying that the candidate could not be elected or serve unless they live in the sub-circuit? Correct, that's exactly right. So the difference is the campaign piece of it and the service piece? Right, the question really is not whether or not you have to reside in the unit to be a judge, nobody disputes that. The question is whether or not an electoral board has the authority to invalidate a candidate's nominating papers where they have not yet satisfied that residency requirement. And this is the first case that I'm aware of involving a judicial candidacy. But no electoral board in no court that I'm aware of has ever held that an electoral board has the authority to invalidate a candidate's nominating papers where they have not yet satisfied the residency requirement, but they can. The question is always not have they done it yet, but can they do it at all? And that's because to rule otherwise is to extend the durational residency requirement by a year, or since the enactment last summer by the legislature, by a year and two weeks. And I don't think that the Constitution supports an interpretation where the legislature has the ability to extend the duration of any residency. The prior Constitution had a five-year residency requirement for judges. That is absent from this Constitution. There isn't one for judges. But the effect of Section 7-12, as interpreted by the appellate court, is to impose one, a one-year residency requirement. If that is the case, because the statement of candidacy is phrased in the present tense, the residency requirement for legislative office just grew from two years to three, and from executive offices to executive offices. Thank you. Okay. Thank you. Good morning, Your Honors. May it please the court, counsel. My name is Joshua Karsh, and I am representing the appellee, Daniel Goodman. My opponent's view of what this case is about is that before the electoral board, the position taken by Mr. Ward was that he had to be a resident of the judicial sub-circuit only by the date where he would be sworn in for office. Not the date of election, the date of swearing in. Before this court, he has taken the position that it's the date of election. Now, I would note that nowhere in Article VI is defined a basis for either of those positions. There is nothing in our judiciary article that speaks of a temporal reference that has to do with the date of election or with the date of swearing in. Neither of those positions is grounded in the text. Now, the position switched again today at the podium because we heard for the first time today that the issue in this case is whether an electoral board has the authority or jurisdiction to rule and pass on a constitutional qualification for office. If you look at the brief filed in this court by Mr. Ward, it lists three issues presented for review. Not a one of them concerns the authority or jurisdiction of an electoral board to pass on constitutional qualifications for office.  It has not been briefed by the parties. It is not presented by the briefing. As for the comment that there is no court of which anybody is aware where this has happened before, there's no citation for that and there are no citations in the brief. I can tell you that in 1998, the Chicago Board of Elections had a case called Moses v. Wright. And in that case, the issue presented was passing on constitutional qualifications for office. I'm happy to address that issue if you like. The authority to pass on constitutional qualifications for office comes from Section 10-10 of the Electoral Code, but that issue is not before you. This case and the issues that are before you boil down to half a dozen points or so. The first is that our Constitution imposes a residency requirement for judicial office. The second is that there must necessarily be a deadline for complying with that requirement. There must necessarily be a deadline because whenever there is an eligibility requirement for office, you have to have a deadline for satisfying it. Otherwise, it's unenforceable. The third point is that we have to assume that the delegates to the 1970 Constitutional Convention were aware of this need to match a deadline to an eligibility requirement. In Section 11 of the Article 6 of the Constitution, they established three eligibility requirements for judicial office. You must have a law license, you must be a United States citizen, and you must be a resident of the proper electoral unit. They knew when they drafted that that no one is a lawyer at birth. They also knew that most of us don't reside in the same home for the entirety of our lives. There had to be a point in time by which you had to become a lawyer, and there had to be a point in time by which you establish residence. They knew, just as we know, that you can't measure that in a vacuum. It has to be by reference to a point in time. And that brings me to the fourth of the six points about which we really shouldn't have any doubt either. It is almost unimaginable that the delegates to the 1970 Constitutional Convention established eligibility requirements for judicial office, but somehow neglected or forgot to set a deadline for meeting. Now, that point is, somewhat surprisingly, actually disputed in this case. You heard it disputed this morning, and if you look in the briefing, you'll see it again on page 21 of the Appellant's Brief, the opening brief. He says that Article VI, quote, does not need any temporal reference point. And on page eight of his reply brief, he reiterates that this case is entirely about the statutory provisions. Now, I put it to you that that simply isn't plausible. We really should be loathe to conclude that the Constitutional Convention, that the delegates to the Constitutional Convention, either overlooked or punted on this issue of a deadline. May I ask some questions about the Constitutional Convention and the choices that were made there? Yes. In terms of the executive and the legislature, there are durational residency requirements, correct? Yes. And is it also true that prior to the 1970 Constitution, there were durational residency requirements in the Judicial Act? In the Judicial Act in 1848, there was a durational residency requirement. It was done away with in 1870. When it was changed again in 1964, they did not restore it. They established a residence requirement, which is durational, but they took out the for two years or three years or four years or five years preceding the election next. So in terms of the legislature and the executive, the durational residency is explicit, correct? Yes. It is also explicit for the judiciary article. But not quite in the same way. Not with the same words, that's right. So explain to me where they made a choice of two years, three years, is that the other one? And here, there's no time limit, no statement of how many years someone must live in a unit that selects the candidate to become a judge. Whereas in the others, they are very specific about the years that someone must be a resident. They are, and that makes them very rigid. And it ties them in no way to the to the date on which you appear on the ballot. What I think they must have decided for judges is they thought it was too rigid to say that it was two years or three years or five years. But they did set a date and that is what section 12 says. Section 12 says, a person eligible for the office of judge may cause his name to appear on the ballot. And the next words in section 12 are at the primary. So we know that this is not in reference solely to general elections. Section 12 says on its face that you have to be eligible to cause your name to be placed on the ballot at the primary. And why does that not also extend the durational residency requirement for the executive and the legislature? Absolutely not. The residency requirements for the legislative branch are controlled by Article 4 of the Constitution. It operates independently in its own right and quite apart from Article 6. Nothing you reach I understand that. I understand that, of course. They're very different. The argument here is in the other sections of the Constitution the durational residency is clear. Two years. Three years. And am I correct that that runs to the date of election? Two years from the date of election? Yes, because those provisions explicitly say two years preceding his election. They have that phrase. So it's very clear as to the timing in those sections and not this section does not have that clear language. You agree with that? Yes, and that's because this section does not run from the date of election. This section runs from the first time that your name will appear on a ballot. And for established party candidates that is at the primary and we know that that's exactly what was contemplated because section 12 states on its face that you must be eligible in order to cause your name to appear on the ballot quote unquote at the primary. So it is tanned to a definite point in time it's just not the election. It is a ballot requirement for the first time you appear on the ballot which may be the primary. And the argument that the same would hold true under your theory for legislative candidates. When they file their candidacy their petitions a year ahead of time they have not completed for example under the example that was given here someone who has moved in a year before the primary has not completed the two year durational residency to be elected. A legislative or executive branch candidate in this state need only satisfy residents by the date of election not by the date they submit their nominating petitions or the primary. And we know that because those articles articles 4 and 5 expressly say preceding his election. It's those words preceding his election which Mr. Casper would like to read into article 6 but are not present in article 6. In place of the words preceding his election in article 6 we don't have a reference to the date of the general election. We have instead a reference to the date on the first day on which you would appear on a ballot when you cause your name to be on the ballot. The delegates to the convention made a decision we know from the text that the date would be preceding the general election is by the date of the primary. And as Judge DeVito has recently reminded us in an article in the Illinois State Bar Journal that makes an enormous amount of sense because most judicial elections are in fact determined at the primary. That may well have been the reason that they made that choice. Now so I put to you that it's just not plausible to conclude as my opponent does that the Constitution doesn't speak to this. He can't find a plausible temporal reference in the Constitution and so he argues to you that the only temporal reference is in the election code and that the election code cannot augment the constitutional qualifications for office and therefore is unconstitutional. The doctrine of constitutional avoidance would also counsel you not to come to that conclusion. If we can avoid declaring the sections of the election code which require you to state in the present tense that you are eligible for office when you file your papers, you should avoid that. And it's easy to avoid. And this brings me to the question we are being asked, this court could and should stop and start the analysis right there. And the sixth point, and really these are the only six points you need to decide this case, is that the Constitution is clear. Section 12 of Article 6 by its plain language establishes a deadline. It states that a judge has a candidate for judge, unquote. Eligible candidates may cause their names to appear on the ballot. That means to have standing, so to speak, to cause your name to appear on the ballot, you must then at that moment in the present tense be eligible to hold judicial office. Eligibility comes before candidacy. That is the syntax of the sentence. An eligible candidate may cause. You must be eligible first. That's what Section 12 says. Section 11 in turn tells us that an eligible person is somebody who has the right residence, is a United States citizen, and has a law license. Unless and until you are a resident, you have a law license, and you are a citizen, you aren't eligible for judicial office. And unless you are eligible for judicial office, you can't cause your name to appear on the ballot. And that is all we need to know to resolve this case. By his own admission, Mr. Ward was not a resident of the Fourth Circuit,   resident of the Fourth Circuit. And that determination is made when he files the nominating petition or the date of the primary? It is made when he files the nominating petitions because that is the act by which he causes his name to be filed. Whether it mattered whether they were residents of the county or residents of the Sub-Circuit, I understood his ultimate answer to be you could be a resident any place except you had to be a resident of the Sub-Circuit as of the date of the election. Your answer would be you have to be a resident of the Sub-Circuit as of the date of filing nominating papers. That is correct. But neither has ever argued that the unit which selects him is anything other than the Sub-Circuit. Is that correct? That is also correct. And I would refer you to page 11 of the appellant's brief, Mr. Casper's  And the question about the unit, of course, was inserted into this case by the dissenting judge in the third district. It had not been in this case before. Neither party has adopted it now. And I think that that is also addressed by this court's opinion. The court observed that the unit that selects a judge may be a division of the circuit, in other words, a Sub-Circuit. So this is the result that has been reached both by the Circuit Court and the Appellate Court below. It is the result compelled by the plain language and it is, I submit to you, the only result that makes common sense. And common sense does and should have a place in constitutional interpretation. Any voter entering the voting booth should be able to trust that all candidates with names on the ballot are, in fact, eligible to serve if they are elected. And that means if they are judicial candidates, they already have the right residence, they already have a law license and they are already citizens. On the other side of this case, what you have is a proposal that would allow candidates to place their names on the ballot, win the election,  be elected. Excuse me, counsel, what happens if the person is elected under Mr. Casper's theory and decides not to move in? Under my theory, yes, under his theory, if the person decides not to move in, the cost is tremendous. You have to run into  problem. You have to tell them next after the election that it was a contingent outcome. Your vote was actually only going to choose the judge who would sit if that judge also decided to change residence. No voter should interrupt. Doesn't that apply to legislators though? No, we do not. It is true that there is no perfect deadline, okay? It is also true that somebody after they assume office could switch residences to. We can't preclude the possibility that somebody will switch residence. What we have for the legislators and for the executive branch officials is that they've already maintained a year or two years of residence in one place. Am I correct that in redistricting years that there's a different provision in statute in terms of legislators moving in? Yes, I believe that's correct. They have like 18 months. In redistricting years, isn't it something like the legislators went at the time that they filed the motion to move to that district? I apologize. I do not know the exact details of that. I can't give you an answer to that question. I'm not exactly sure either. But my sense is your very strong policy argument that this is so shocking to the electorate, I think this occurs in the context of legislators in a redistricting year. They may not be living in the newly drawn district when they're elected. If that were the case, and I don't know whether it is or not, as you're painting it, we would be giving the voters that notice ahead of time because of the provision of statutory law. We would be telling them ahead of time. But you are absolutely correct. We have lots of judicial, legislative, and executive branch officials who are elected by geographic residents. Sometimes that residence must obtain throughout the duration of their office. There is no system that can keep somebody from moving once they're in office and say, uh-oh, you know, we're looking for and what the constitutional framers had in mind was a system that will work in the majority of cases. In fact, in the vast majority of cases. If you tell somebody you've got to be a resident for two years preceding your date of election, that has always in the legislature through the nominating petition deadline years and years in advance of taking office and that's never happened. It's a parade of horribles. It's not realistic. So, in practice, both legislative and executive branch officials are residents of the proper constitutional language. There is no other. People shouldn't have to hold their breath when they vote, cross their fingers, wait to see if the majority will be honored if somebody happens to pass the bar or becomes a United States citizen or in fact moves. Thank you, Your Honor. Your Honor,  briefly. Mr. Casper, what's the result if we follow your line of reasoning and the candidate in the primary loses or wins and doesn't establish residency by the election? We have to have another election if it's a primary case. Is that correct? You can't establish residency  election. No. Or would the other party win in the general election who had garnered enough votes but not enough to beat the candidate that didn't establish residency? If the candidate has not established residency by the time the general election occurs, I don't believe that person is eligible for the office, which means they could not be sworn into the office. If they were sworn into the office, they would be subject to Quo Ronto, as counsel has indicated. Would the person who got second place win? I think that results in a vacancy in the office, which is filled the way vacancies are filled in the ordinary course of business. I don't think there's a contingent result of an election for any office in Oklahoma. How would you know that? How does anybody know that? Somebody is elected. Are we expecting somebody to be a watchdog? Did they prove their residency? The respondent's argument is that the electoral board process is the watchdog for this process. In terms of the case, he talked about common sense. We think a common sense approach is that the same form that all candidates have to file means the same thing. All candidates are required to file a statement of candidacy. It says, I am qualified. Their argument says that it means I am qualified in the same way. For the executive and legislative, there are requirements of pre-residency, but you are arguing that there are not requirements of pre-residency for judicial, just the opposite. No. What I am suggesting is that a candidate for the legislature who is not yet satisfied the two years is not subject to invalidity through the electoral board process. Even though at the time they filed their statement of candidacy, they have not satisfied the requirement. In this case, this candidate has likewise not satisfied the residency requirement when they filed. So why should one be eligible and one not be? What about Justice Carmeier's discussion on the primary? Your opposing counsel said that when you file your candidacy, it puts your name for the primary as opposed to the general election. Well, obviously, in order to appear on the general, the purpose of the primary is to have your name appear on the general election. But you have to be a resident for the primary to cause your name to be a resident at the general    primary is the general election. And that's the only date that the judge has selected. And in fact, their interpretation means that how long you have to live in the sub- circuit ---- what I think the fact that the primary is often determinative of who is going to win the general election doesn't change the constitutional meaning of when a person is selected. A person is not selected, even if they're unopposed, until the general election. I think that is the  you're not selected to be a judge. You're selected to be a party nominee to appear in the general  And the Constitution refers to selection of judges, not party nominees. And so the other thing that's under the respondent's theory, how long you have to live in the sub-circuit depends on what kind of candidate you are. Democrats and Republicans have to live in the sub-circuit for a year before the election, and Green Party candidates had to last a year or two, but next year they won't because they're not an established party anymore. But if you're an independent or a new party candidate, you have to live in the district, I think, 230 days less than if you're an established party candidate. We think that residency requirements should be uniform. They should be easy to understand, they should be easy to find, and they should be measured based on election date, the same way that they are for legislative candidates and  candidates. I'm not sure that I fully understand your response. I thought you said it didn't matter whether it was the county or the sub-circuit. I asked Mr. Karch that and he said it was the sub- circuit. What is the unit that selects him if there are sub-circuits within either Cook County or Will  I believe it is the sub-circuit. I apologize if I was unclear. Thank you. Thank you, Your Honor. Case number 109-796, Goodman v. Ward, will be taken under advisement as agenda number nine. Marshal, the Supreme Court stands adjourned.